UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jared R. G., | Case No. 21-CV-1834 (JRT/JFD) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jared R. G. seeks judicial review of a final decision by the Commissioner of Social Security denying his application for disability insurance benefits ("DIB"). Plaintiff contends he is disabled by primary progressive multiple sclerosis and low vision. The case is currently before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 16) and Defendant's Motion for Summary Judgment (Dkt. No. 18), which were referred to the undersigned for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and District of Minnesota Local Rule 72.1(a)(3)(D).

Plaintiff seeks reversal of the Commissioner's final decision and remand to the Social Security Administration on two grounds: (1) the administrative law judge ("ALJ") did not evaluate a letter dated June 5, 2020, from Dr. Gary Beaver, and (2) the ALJ erred in evaluating Plaintiff's subjective statements. As set forth below, the Court concludes that the ALJ did not err in either respect and therefore recommends that Plaintiff's motion be

1

denied, the Commissioner's motion be granted, and the Commissioner's final decision be affirmed.

I.   **Background**

Plaintiff applied for DIB benefits on February 11, 2019, alleging disability beginning on August 12, 2017. (Soc. Sec. Admin. R. (hereinafter "R.") 244, 284–85.)[1] His alleged disabling impairments were primary progressive multiple sclerosis and low vision. (R. 278.) Plaintiff later amended his disability onset date to January 23, 2019. (R. 53.)

A.   **Relevant Medical Evidence**

The most relevant medical evidence is from the period of time between the date of the alleged onset of disability (January 23, 2019) through the date of the final decision (December 2, 2020). The Court therefore focuses on evidence during, immediately before, and immediately after that timeframe. In addition, the Court does not summarize all of the medical evidence in the record, but only the evidence pertaining to the issues raised for judicial review.

On September 21, 2018, Plaintiff saw Dr. Jonathan Calkwood, MD, for treatment of multiple sclerosis. (R. 419.) Plaintiff was working part-time as a janitor and reported decreased strength after working four hours. (R. 419.) He also reported dimmed and blurred vision "when he moves and gets warm." (R. 422.) Plaintiff's other subjective symptoms included difficulty with multitasking and word finding, worsening balance, low back pain,

---

[1] The Social Security administrative record is filed at Dkt. Nos. 21 through 21-10. The record is consecutively paginated, and the Court cites to that pagination rather than docket number and page.

and left-hand numbness. (R. 423–24.) But Plaintiff also reported "minimal fatigue," daily exercise, ability "to perform strenuous tasks," and no bladder urgency or frequency for the preceding few months. (R. 422.)

Dr. Calkwood's diagnoses included multiple sclerosis, neurogenic bladder, visual field defect, and optic neuropathy. (R. 420.) Dr. Calkwood found that Plaintiff's "pattern of vision loss is consistent with worsening demyelinating disease." (R. 422.) Dr. Calkwood also noted "[s]low worsening of [symptoms] without resolution" and "damage in temporal portion of optic nerve." (R. 421.) An MRI in May 2018 showed no new or enhancing lesions since an MRI in July 2017 (R. 420–21), but an MRI in September 2018 showed one new, non-enhancing lesion. (R. 421.)

Dr. Calkwood remarked that Ocrevus infusions were "adequately managing patient's disease activity." (R. 421.) He also recommended that Plaintiff wear a cooling vest and drink ice water when working, and use tinted glasses when driving to improve vision. (R. 422, 424.) Dr. Calkwood further recommended counseling for anger and irritability. (R. 422–23.)

A progress note from Dr. Beaver on January 6, 2020, documents that Plaintiff's MRIs were stable and he felt stable overall. (R. 461.) Plaintiff reported bladder urgency and frequency, fatigue, and good sleep. (R. 461.) On examination, Plaintiff had intact memory, fund of knowledge, attention, and language function. (R. 462.) He had full strength in all extremities. (R. 462.)

A progress note from Dr. Matthew Cossack on February 4, 2020, noted Plaintiff's chief complaints as eye problems and multiple sclerosis. (R. 453.) Dr. Cossack assessed

3

Plaintiff with optic atrophy, multiple sclerosis, internuclear ophthalmoplegia, suspected glaucoma, and myopia with astigmatism. (R. 456.) Plaintiff described trouble with his side gaze unless he closed one eye. (R. 456.) Dr. Cossack recommended continued observation and a yearly visual field test. (R. 457.) An MRI of the cervical spine was generally normal and stable. (R. 465–68, 516.)

Plaintiff saw Dr. Beaver next on June 5, 2020. (R. 524.) Plaintiff said he was doing about the same but had some double vision and more cognition difficulties. (R. 524.) Dr. Beaver noticed that Plaintiff sometimes lost his train of thought during the interview. (R. 524.) Dr. Beaver recommended that Plaintiff restart counseling and prescribed Prozac for depression, anxiety, and energy. (R. 524.) Dr. Beaver referred Plaintiff for a neuropsychology consultation for cognitive impairment (R. 526), but there is no record of that consultation.

On June 5, 2020, Dr. Beaver wrote the following letter on Plaintiff's behalf:

> [Plaintiff] is a 28-year-old male who I follow for the diagnosis of relapsing-remitting multiple sclerosis. First symptoms began in 2013 when he was noted to have some visual symptoms and then in 2015 starting having some episodes of double vision. In 2017 playing softball, running, left leg would not lift up and he tripped and fell. An MRI which revealed multiple white matter lesions within the subcortical white matter brainstem. The patient had an abnormal lumbar puncture which was consistent with diagnosis. The patient was also subsequently seen by Dr. Jonathan Calkwood at the Schapiro MS Center and the patient was placed on Ocrelizumab, which he has been on ever since, and has had good response. The patient continues to struggle with issues with urinary urgency, frequency. Has significant issues with fatigue. Noticing more issues with cognition. He states he is forgetful if he loses his train of thought frequently. In addition, he also has noted difficulty with multitasking and sustained attention. He is having lots of issues with increasing anxiety and irritability as well. Also suffers from significant

fatigue. Due to the issues outlined above, it is my medical opinion the patient would not be able to maintain sustained gainful employment.

(R. 488.)

### B.     Administrative Proceedings

Plaintiff's DIB application was denied on initial review and reconsideration. At Plaintiff's request, an ALJ held a hearing on November 18, 2020. (R. 48.) The hearing was held by telephone due to the COVID-19 pandemic. (R. 50.) At the time of the hearing, Plaintiff testified, he was taking anti-anxiety medication and an antidepressant and receiving Ocrevus infusions. (R. 61.) Plaintiff testified that he had attended one counseling session but did not continue counseling via telehealth appointments after the COVID-19 pandemic began. (R. 61.)

Plaintiff testified that on a typical day, he woke between 9:00 a.m. and 12:00 p.m., ate toast or bacon for breakfast, cleaned the house, made a sandwich or heated an entrée for lunch, took a long walk, watched television, and read. (R. 62–63.) He ate a takeout meal for dinner, and afterward watched movies or played boardgames with his girlfriend. (R. 64.) Plaintiff drove once every three days or so, mainly to shop for groceries. (R. 55.) He cared for his own personal hygiene. (R. 62.) According to Plaintiff's testimony, his past work experience includes work as a part-time custodian at a daycare facility, pizza delivery driver and baker, and restaurant bartender/server. (R. 56–58, 73.)

Plaintiff further testified that he has a partial blind spot in the middle of his right eye. (R. 62.) The impairment was diagnosed before his most recent driver's license renewal test but did not affect his ability to pass the vision component of the test. (R. 64–65.)

Plaintiff testified that eating red meat caused blurred vision (R. 67), and washing dishes in hot water caused double vision (R. 68). Plaintiff did not use a cooling vest as recommended. (R. 68.) Plaintiff stated he wore protective undergarments due to bladder frequency. (R. 65.) According to Plaintiff, he urinated 15 to 20 times a day and had only 45 seconds warning before needing to void his bladder. (R. 65.)

Plaintiff testified that he also experienced fatigue. (R. 67.) He had difficulty keeping his eyes open some days and needed to take breaks from tasks. (R. 67.) Plaintiff said he also had difficulty focusing and concentrating daily and would lose the thread of a conversation mid-sentence. (R. 68–69.) Plaintiff testified that he also constantly had trouble balancing and walking and could walk only a few blocks before needing to rest. (R. 69–70.) In response to a question about what would prevent him from doing a simple job with little walking or lifting, Plaintiff testified that it would be getting to the job because he did not like to drive. (R. 71.) Plaintiff also testified that his "attitude problem" and lack of social skills would preclude him from working. (R. 71.)

Vocational expert Alida Coles testified at the hearing in response to a hypothetical question posed by the ALJ. (R. 71.) The ALJ asked Coles to consider a hypothetical individual of Plaintiff's age, education, and work experience; who would be capable of performing less than a full range of light work; who could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; who would be limited to frequent balancing, kneeling, stooping, crawling, and crouching; who could not drive commercially; who could tolerate frequent exposure to extreme cold, humidity, wetness, unprotected heights, and hazardous machinery; who would need ready access to a restroom, meaning one minute walking

6

distance; and who would be off-task less than 10 percent of the workday. (R. 75–76.) Coles testified in response that such an individual could not perform Plaintiff's past work but could work as a collator operator, fundraiser, or order caller. (R. 76–78.)

The ALJ issued a written decision on December 2, 2020, determining that Plaintiff was not disabled. (R. 12.) Pursuant to the five-step sequential analysis outlined in 20 C.F.R. § 404.1520(a), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the date of the alleged onset of disability. (R. 17.) At the second step, the ALJ found that Plaintiff had severe impairments of "multiple sclerosis with optic neuropathy and neurogenic bladder; degenerative disc disease; and history of left lower extremity fracture." (R. 17.) At step three, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC").[2] Relevant to the issues raised on judicial review, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other relevant evidence of record. (R. 22.) In particular, imaging results showed that prescribed infusion therapy had stabilized Plaintiff's multiple sclerosis. (R. 22.) In addition, the ALJ found that Plaintiff's daily activities, work history, and longitudinal treatment history were also inconsistent with his claimed symptoms. (R. 22.)

---

[2] RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

7

The ALJ also considered the persuasiveness of medical opinion evidence. (R. 22–23.) The ALJ explicitly declined to "provide articulation about the evidence that is inherently neither valuable nor persuasive," consistent with 20 C.F.R. § 404.1520b(c). (R. 20.) The ALJ explicitly mentioned Dr. Beaver's June 5, 2020 letter ("Ex. 4F") as a "statement[] addressing issues reserved to the Commissioner" about which the ALJ would provide no articulation. (R. 20; *see* R. 488.)

The ALJ concluded that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps, stairs, ladders, ropes, and scaffolds. He can frequently balance, stoop, kneel, crouch, and crawl. He cannot drive commercially. He is limited to frequent exposure to extreme cold, wetness, humidity, hazardous moving machinery, and unprotected heights. He will require ready access to a restroom, which is defined as being within one minute of walking distance, and he will be off-task for less than 10% of the workday.

(R. 19.)

The ALJ then proceeded to step four of the sequential evaluation and determined that Plaintiff could not perform his past work. (R. 24.) At step five, however, the ALJ found that Plaintiff could make a successful adjustment to other work such as a collator operator, fundraiser, or order caller. (R. 26.) Consequently, Plaintiff was not disabled. (R. 26.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

### C. Judicial Review

Plaintiff seeks reversal of the Commissioner's final decision and remand for further administrative proceedings. (Pl.'s Mem. Supp. Mot. Summ. J. at 16, Dkt. No. 17.) Plaintiff argues that (1) the ALJ failed to consider Dr. Beaver's June 5, 2020 letter, and (2) the ALJ did not properly evaluate Plaintiff's subjective statements about his symptoms. (*Id.* at 11, 15.) The Commissioner opposes Plaintiff's motion and asks that the final decision be affirmed.

## II. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is a claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

### III. Discussion

#### A. The ALJ's Consideration of Dr. Beaver's Letter

Plaintiff argues the ALJ failed to "evaluate and completely ignored" Dr. Beaver's letter, in violation of 20 C.F.R. § 404.1520c. (Pl.'s Mem. at 11.) This argument requires the Court to consider three regulations: 20 C.F.R. § 404.1520c(c), § 404.1513(a)(2), and § 404.1520b(c).

Title 20 C.F.R. § 404.1520c(c) governs an ALJ's consideration of "medical opinions" and requires the ALJ to determine the persuasiveness of a medical opinion according to five factors.

Title 20 C.F.R. § 404.1513(a)(2) states that "[a] medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in performing work activities.

Title 20 C.F.R. § 404.1520b(c) provides that an ALJ need not consider a medical source's statements on matters reserved to the Commissioner, such as that a claimant is disabled or not able to work. 20 C.F.R. § 404.1520b(c)(3)(i). Section 404.1520b(c) describes such evidence as "inherently neither valuable nor persuasive" and thus excuses an ALJ from having to "provide any analysis about how [he or she] considered such evidence in our determination or decision, even under § 404.1520c." 20 C.F.R. § 404.1520b(c)(3)(i).

There is no question that the statement in Dr. Beaver's letter "it is my medical opinion the patient would not be able to maintain sustained gainful employment" is a statement about whether Plaintiff was able to work and therefore an issue reserved to the Commissioner under § 404.1520b(c). Consequently, the ALJ did not have to analyze or even mention that statement. *See* 20 C.F.R. § 404.1520b(c)(3)(i). But the ALJ did so anyway, so that there would be no doubt that the ALJ considered the statement neither valuable nor persuasive and that it was a statement on an issue reserved to the Commissioner. Therefore, the Court finds that the ALJ did not err in his consideration of Dr. Beaver's statement that Plaintiff could not work.

As to the remainder of the letter, it is not a medical opinion. The remaining statements merely summarize Plaintiff's medical history and reported symptoms. Dr. Beaver did not state what Plaintiff could still do despite his impairments, nor did he identify a specific impairment-related restriction in a work-related ability. *See* 20 C.F.R. § 404.1513(a)(2). Dr. Beaver's statements about Plaintiff's cognition, forgetfulness, losing his train of thought, and difficulty with multitasking and sustaining attention were based

11

on Plaintiff's subjective reports, not Dr. Beaver's clinical findings or objective observations. (*See* R. 488 ("He states he is forgetful . . . . "In addition, he has also noted difficulty . . . .").) And, while Dr. Beaver stated that Plaintiff had significant issues with fatigue, anxiety, and irritability, Dr. Beaver did not describe what Plaintiff could still do despite these impairments, nor did Dr. Beaver identify a specific limitation or restriction in a work-related activity that could be attributed to an impairment. Accordingly, the ALJ was not obligated to evaluate the remainder of the letter as a medical opinion under § 404.1520c(c). *See Pierce v. Kijakazi*, No. 4:20 CV 1426 CDP, 2022 WL 888141, at *7 (E.D. Mo. Mar. 25, 2022).

### B.    The ALJ's Evaluation of Plaintiff's Subjective Statements

In evaluating a claimant's statements about the intensity, persistence, and limiting effects of symptoms, an ALJ must first determine whether the claimant has a medically determinable impairment that could cause the alleged symptoms. SSR 16-3p, 2016 WL 1119029, at *3 (S.S.A. Mar. 16, 2016). That determination is not at issue here.

Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms by considering the objective medical evidence and statements from the claimant and other sources, as well as the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *4–7.

Plaintiff faults the ALJ for focusing on imaging results from February 2020 that "showed no evidence of any active disease," without also considering a notation on Dr. Beaver's June 5, 2020 progress note that Plaintiff was "having more issues with cognition difficulties, losing his train of thought, difficulty with speed of information processing, difficulty with multitasking." (Pl.'s Mem. at 16 (citing R. 22, 524).) But that notation did not reflect Dr. Beaver's objective examination findings or observations. It was a summary of Plaintiff's reported, subjective statements about his symptoms (*see* R. 524), and as the Court will conclude below, the ALJ did not err in finding that Plaintiff's statements about his symptoms were somewhat inconsistent with the relevant evidence. The ALJ therefore did not err in his consideration of the imaging results or Plaintiff's subjective statements summarized on the progress note.

Plaintiff next argues that the ALJ did not consider Dr. Beaver's remark on the June 5 progress note that Plaintiff lost his train of thought during the interview or Dr. Beaver's referral of Plaintiff to a neuropsychologist for a cognitive evaluation. (Pl.'s Mem. at 16.) An ALJ need not discuss every medical record, however. *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998). "An ALJ's failure to cite specific evidence does not indicate that such

13

evidence was not considered." *Id.* The ALJ cited to Dr. Beaver's June 5 progress note elsewhere in the decision (R. 21, 22, 23); thus, the ALJ clearly considered this evidence. Moreover, the ALJ cited to the June 5 progress note as evidence that Plaintiff had been "diagnosed with reactive depression and anxiety" and that Plaintiff "dealt with some anxiety and depression" (R. 23), further establishing that the ALJ considered the evidence. As to any inference that could be drawn from Dr. Beaver's remark about Plaintiff losing his train of thought and referral for a cognitive evaluation, the ALJ summarized evidence to the contrary, such as numerous normal mental status examinations and Plaintiff's participation in daily activities that required concentration and communication with others. (R. 23.) The Court therefore finds the ALJ did not err in his consideration of these parts of the June 5 progress note.

Finally, Plaintiff takes issue with the ALJ's finding that Plaintiff's multiple sclerosis was stable and argues that stability obtained through medication "does not mean symptoms do not continue." (Pl.'s Mem. at 16.) The Court does not disagree, nor did the ALJ. The ALJ considered Plaintiff's symptoms such as vision problems; bladder frequency and urgency; and abilities to lift, squat, bend, stand, walk, climb, remember, and get along with others. (R. 20, 21.) The ALJ factored the symptoms that caused functional limitations into the RFC. (R. 24.)

In sum, the ALJ did not err in evaluating the intensity, persistence, and limiting effects of Plaintiff's symptoms. The ALJ considered all of the medical evidence, Plaintiff's statements, statements by others, Plaintiff's daily activities, specific details about the symptoms, factors that precipitated and aggravated the symptoms, Plaintiff's medications

14

and other treatments, and Plaintiff's work history. (R. 20–24.) The ALJ identified numerous inconsistencies between the claimed severity of the symptoms and the relevant factors, and the ALJ's assessment is supported by substantial evidence in the record. (*Id.*) Consequently, the Court recommends that the Commissioner's decision be affirmed.

### IV. Recommendation

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Plaintiff's Motion for Summary Judgment (Dkt. No. 16) be **DENIED**;

2. Defendant's Motion for Summary Judgment (Dkt. No. 18) be **GRANTED**;

3. The Commissioner's decision be **AFFIRMED**; and

4. **JUDGMENT BE ENTERED ACCORDINGLY**.

Date: June 2, 2022                                *s/ John F. Docherty*
                                                  JOHN F. DOCHERTY
                                                  United States Magistrate Judge

### NOTICE

**Filing Objections**: This Report and Recommendation is not an order or judgment of the District Court and therefore is not appealable directly to the Eighth Circuit Court of Appeals. Pursuant to D. Minn. LR 72.2(b)(1), a party may file and serve specific written objections to this Report and Recommendation within fourteen days. A party may respond to objections within fourteen days of being served a copy. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).